**HEBRON PUBLIC SCHOOL DISTRICT NO. 13 OF MORTON COUNTY, STATE OF NORTH DAKOTA, Plaintiffs,**

v.

**UNITED STATES GYPSUM CO., Defendants.**

Civ. No. A1–86–184.

United States District Court, D. North Dakota, Southwestern Division.

Oct. 17, 1989.

**417**

Steven C. Lian, Minot, N.D., Dan Speights, Hampton, S.C., for plaintiffs.

Wickham Corwin, Fargo, N.D., Thomas B. Kenworthy, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

### Introduction

Plaintiff in this case is Hebron Public School District No. 13 of Morton County, North Dakota (*hereinafter* Hebron). Hebron brought suit against defendant United States Gypsum Company (*hereinafter* USG) charging that some asbestos-containing ceiling tiles manufactured by USG had caused damage. Hebron, after an eight day trial, submitted its case to the jury on five different causes of action. These included: 1) negligence; 2) strict tort liability; 3) breach of implied warranty of merchantability; 4) breach of implied warranty of fitness for a particular purpose; and 5) nuisance. After consideration, the jury returned a verdict for Hebron in the amount of $382,000 in compensatory damages and $450,000 in punitive damages. This award was based upon Hebron's negligence cause of action. Judgment for Hebron was filed and entered on July 18, 1989.

On July 28, 1989 USG filed a motion requesting this Court to grant it "judgment not withstanding the verdict, in whole and in part, and ...a new trial" as allowed in F.R.Civ.P. 50(b), 59, and 60(b). USG also requested a remittitur of $88,960. USG filed its motion within the ten days allowed by Rule 50(b). A brief in support of this motion was also filed. Hebron requested and received an extension of time in which to respond to USG's motion on August 7, 1989. On August 28, 1989 Hebron filed a memorandum in opposition to USG's motion for judgment not withstanding the verdict. In determining whether to grant USG's motion, this Court must decide whether to disregard the jury's findings.

### Issues

I. Whether North Dakota Statute § 28–01–44 Bars Hebron's Claims.

II. Whether a Judgment Notwithstanding the Verdict Should Be Entered On the Punitive Damages.

A. Does Collateral Estoppel Bar Recovery of Punitives.

B. Was There Insufficient Evidence to Uphold the Jury's Verdict.

III. Whether Hebron's Theories of Recover Are Sustained By the Evidence and Are Legally Sound.

IV. Whether the Exclusion of Federal Specifications for Purchase of Acoustical Plaster in 1959 and 1963 was in Error.

V. Whether There Should Be a Remittitur of $88,960, the Amount of Increase in Plaintiff's Ad Damnum Claim, Made the Day Before Trial.

### Discussion

When considering motions requesting judgment notwithstanding the verdict, the trial court must follow a fairly strict standard of review. *See Northside Mercury Sales & Serv., Inc. v. Ford Motor Co.*, 871 F.2d 758, 760 (8th Cir.1989). The trial court must:

(a) consider the evidence in the light most favorable to the prevailing party,

(b) assume that the jury removed all conflicts of evidence in favor of that party,

(c) assume as true all facts which the prevailing party's evidence tended to prove,

(d) give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and (e) deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence. *Id.*

The Eighth Circuit stated "the determination ... is left to the jury, to obtain its common feel for the state of the community mores and for the matter in which they would operate upon the facts in question." *Id.* at 762 (citing *Restatement (Second) of Torts* § 767 comment 1 (1979)). Commentators have noted additional reasons for not interfering with a jury's findings unless these are clearly erroneous. *See* Stempel, *A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Adjudication Process,* 49 Ohio St. L.J. 95 (1988). These positive reasons for desiring jury verdicts include "the infusion of community standards into litigation; promoting public confidence in the judicial system and fairness of litigation results; maintaining democratic values of participation; and citizen action to the system." *Id.* at 166. Courts must remain reluctant to reverse a jury finding for all of these reasons.

## I. Whether North Dakota Statute § 28–01–44 Bars Hebron's Claims.

■ USG asserts that this Court improperly allowed Hebron's claims to be heard because these claims are barred by N.D.C.C. § 28–01–44. N.D.C.C. § 28–01–44 sets a ten year limit for claims to be brought against certain persons identified by the statute. USG asserts that it should be protected by the statute. USG does not present any North Dakota precedent to support such a claim. This Court notes that the statute is headed by a caption that identifies it as:

*Limitation of action—Person submitting plans for improvements to real estate. –1.*

N.D.C.C. 28–01–44.

This Court has previously ruled that such a provision does not shield the manufacturers of supplies to builders. Instead, the provision is designed to protect architects and other contractors who submit plans to the consumer. In discussing possible constructions of the statute, the North Dakota Supreme Court observed "the possibilities for long time liability for the professional architect or designing engineer are enormous." *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733, 737 (N.D.1988). At no time has the North Dakota Supreme Court implied that the statute was intended to protect other groups. This Court therefore declines to reverse its prior ruling that the statute affords USG no protection.

## II. Whether a Judgment Notwithstanding the Verdict Should Be Entered on the Award of Punitive Damages.

### A. Does Collateral Estoppel Bar Recovery of Punitives.

■ USG asserts that Hebron is collaterally estopped from recovering punitive damages. Collateral estoppel, or issue preclusion, is "simply that later courts should honor the first actual decision of a matter that has actually been litigated." C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4416 (1981). Traditionally, one could only use the doctrine of collateral estoppel on one who was a party in prior litigation or a privy of a party. The notion of privity being the overriding concern for collaterally estopping a party has today somewhat worn away. *See id.* § 4448. USG asserts that Hebron is collaterally estopped from asserting its claim for punitive damages because it employed a firm of South Carolina lawyers. These South Carolina attorneys had previously lost a claim asserting punitive damages. Whether USG's assertion will be successful depends on this Court's determination of the "privity" or relationship between Hebron and its lawyers.

Professors Wright, Miller, and Cooper believe that several over-lapping concepts control the issue of to whom collateral estoppel applies. *See id.* The first of these concepts concerns whether the persons who are sought to be bound were actual parties in the prior litigation. *Id.* USG does not assert that Hebron itself was engaged in

previous litigation against it, so this concept does not prevent Hebron from asserting a claim for punitive damages.

The second major concept cited by Wright, Miller & Cooper concerns persons who were somehow represented in the first litigation. *Id.* This category includes those who are suvivors, spouses, executors and the like of former parties. *Id.* USG asks this Court to extend this category to include lawyers. The Court refuses to make such an extension. It is important to remember that the case is that of the client: a lawyer only serves as that client's advocate. Hebron cannot be bound by previous assertions of its lawyers on cases with which Hebron had no involvement. To allow such a result would serve only to limit the choice of legal aid available to parties. That the choice of counsel is to be left to the discretion of the client is established within our profession. *See generally, A.B.A. Code of Professional Responsibility* DR 2–108 (agreements restricting the practice of a lawyer are prohibited). Indeed, the Supreme Court, in defining privity, notes the definition includes those:

> for whose benefit and at whose direction a cause of action is litigated.... One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in and of some interest of his own ... is as much bound ... as he would be if he had been a party of record.

*Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). The concept of relations with another party leading to privity does not include that between a client and his or her lawyer.

The final area considered by Wright, Miller & Cooper concerns successors in interest and is not appropriate to the facts in this case.

B. *Whether there was Insufficient Evidence to Support the Jury's Verdict.*

■ USG contends that Hebron failed to present at trial evidence to support its claim that USG acted with malice. Such a finding is necessary to support a finding of punitive damages. Under North Dakota law, malice may consist of 1) a direct intention to injure another, or 2) a reckless disregard of another's rights. *Smith v. American Family Insurance Co.,* 294 N.W.2d 751 (N.D.1980). The Court finds that sufficient evidence was presented at trial to uphold the jury's award of punitive damages.

III. Whether Hebron's Theories of Recovery Are Sustained By the Evidence and Are Legally Sound.

USG maintains that this Court erred in presenting the jury with a general verdict. Hebron submitted its case to the jury on five different causes of action: 1) negligence, 2) strict tort liability, 3) breach of implied warranty of merchantability, 4) breach of implied warranty of fitness for a particular purpose, and 5) nuisance. The Court instructed the jury that it could award punitive damages only if it found negligence on the part of USG. USG maintains that several of the theories of liability presented to the jury were not sustained by the evidence or legally sound. This Court, however, has already ruled that all of the various theories presented to the jury could be sustained by the evidence. Rule 49 of the Federal Rules of Civil Procedure leaves whether to grant special verdicts to the discretion of the Court. USG has not convince the Court that its earlier ruling was in error.

IV. Whether the Exclusion of Federal Specifications for Purchase of Acoustical Plaster in 1959 and 1963 Was in Error.

■ USG at trial attempted to use federal contract specifications which stated that Sabinite acoustical plaster could be used in federal buildings. USG insists that such specifications should have been submitted pursuant to N.D.C.C. § 28–01.1–05(3). N.D.C.C. § 28–01.1–05(3) entitles a product manufacturer to a:

> rebuttable presentation that a product is free from any defect or defective condi-

420

tion where the alleged defect in the plans or design for the product or the methods and techniques of manufacturing, inspecting and testing the product were in conformity with government standards established for that industry which were in existence at the time the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were adopted.

*Id.* The contract specifications USG wanted admitted were not government standards established for the plan, design, manufacture, inspection, or testing of the acoustical plaster industry. They were merely contract specifications allowing the use of a product already manufactured. Using the standards set out in *Northside Mercury Sales & Serv., Inc. v. Ford Motor Co.*, this Court sees no reason to reverse itself. *Id.*, 871 F.2d 758, 760 (8th Cir.1989).

V. Whether There Should Be a Remittitur of $88,960, the Amount of Increase in Plaintiff's Damages from Pretrial.

■ USG asks the Court to remit $88,-960 because Hebron increased its damages claim by this amount the day before trial started. First, this Court notes that USG had ample opportunity to cross-examine witnesses about Hebron's damages. Secondly, USG chose not to call witnesses who would dispute all or part of Hebron's claim. Even without the $88,960 increase, a substantial sum was being disputed. USG chose not to introduce *any* evidence about damages. It cannot not now argue that the jury should not have found for Hebron.

■ USG is asking the Court to make the pleadings an artifical line, one which once created stands to limit a plaintiff's prospective damages. Pleadings should serve, however, mainly to make the defendants aware of potential liability. Under F.R.Civ.Pro. 15(a), a court has the power to allow parties to amend their pleadings. In addition, Rule 15(b) allows modification of the pleadings so that they will conform with the evidence. The pleadings do not limit the amount of the verdict, where the amount is justified by the evidence admitted during trial. *Helgeson v. Locken*, 130

N.W.2d 573, 577 (N.D.1964). In regard to the prayer for relief, damages may be given in excess of the amount demanded. *Couto v. United Fruit Co.*, 203 F.2d 456, 457 (2d Cir.1953). Since damages may be awarded in excess of the pleadings, the Court feels USG has suffered no damage by its decision to allow Hebron to modify its pleadings.

The concept of remittitur is designed to force a successful plaintiff to relinquish a portion of a verdict when that verdict is not supported by the evidence. *Rice v. Union Pacific R. Co.*, 82 F.Supp. 1002, 1007–08 (D.C.Neb 1949). In the present case, ample evidence was presented by Hebron to sustain the jury's verdict. Since the Court finds the verdict not excessive and supported by the evidence, there can be no remittitur.

*Conclusion*

In order to obtain a judgment not withstanding the verdict and a new trial, a court must be convinced that the finder of fact reached an improper conclusion. The jury must have acted in a manner that no reasonable jury could have behaved. USG has not met this goal.

IT IS THEREFORE ORDERED:

1) THAT USG'S MOTION REQUESTING THIS COURT GRANT IT "JUDGMENT NOT WITHSTANDING THE VERDICT, IN WHOLE AND IN PART, AND ... A NEW TRIAL" IS DENIED.

2) THAT USG'S REQUEST FOR A REMITTITUR OF $88,960, THE AMOUNT OF INCREASE IN PLAINTIFF'S DAMAGES, IS DENIED.