NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1013n.06

Nos. 12-4239, 12-4475

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

VERSATILE HELICOPTERS, INC.,

    Plaintiff-Appellee Cross-Appellant,

        v.

CITY OF COLUMBUS, OHIO,

    Defendant-Appellant Cross-Appellee.

                            /

**FILED**
Dec 03, 2013
DEBORAH S. HUNT, Clerk

On Appeal from the United
States District Court for the
Southern District of Ohio

**Before:**    **KEITH, GUY, and GIBBONS, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Following a three-day trial, judgment was entered in favor of Versatile Helicopters, Inc., and against the City of Columbus, Ohio, for breach of contract in connection with the purchase of a used police helicopter through Air Flite, Inc., a third-party broker engaged by the City to market the helicopter for sale. The City appeals from the denial of its motion for judgment as a matter of law, Fed. R. Civ. P. 50, maintaining that it could not be held liable because it was not a party to the purchase agreement. The City also appeals from the exclusion of testimony regarding a purported failure to mitigate damages. Neither claim presents grounds for reversal.

    Versatile cross appeals from the district court's refusal to enter judgment in the full amount of the damages awarded by the jury for breach of contract because only $250,000

was requested for that claim in the Amended Complaint. The district court denied Versatile's

post-trial motion to amend the prayer for relief to conform to the proofs and to alter or amend

judgment under Fed. R. Civ. P. 15(b)(2) and 59(e), or, in the alternative, to reconsider the

denial of its pretrial motion for leave to amend the prayer for relief under Fed. R. Civ. P.

15(a). Finding error in the refusal to enter judgment in the full amount of damages awarded

by the jury in this case under Fed. R. Civ. P. 54(c), we reverse and remand for entry of an

amended judgment consistent with this opinion.

## I.

We turn directly to the claims made on appeal by the City of Columbus concerning

the exclusion of evidence and the denial of its motion for judgment as a matter of law. The

evidence at trial included testimony from six witnesses—four live and two by deposition—

and was largely undisputed.

### A.    Facts

The City of Columbus decided in 2008 to sell one of the helicopters it owned and

operated as part of the police department's fleet: a McDonnell Douglas MD500E helicopter

(serial number 0540E/registration number N553CP). To that end, the City engaged Air Flite,

Inc., located in Oklahoma, to act as the exclusive agent and broker to sell that helicopter for

a 5% commission. The Marketing Agreement, signed by the City's Safety Director on behalf

of the City as the "Owner" of the helicopter, and by Mark White, President of Air Flite,

provided, in part, that all offers would be forwarded to the Owner; that Air Flite would have

no authority to accept or bind Owner to any sale; and that "[a]cceptance of any offer shall

be in Owner's sole discretion." Air Flite also was expressly authorized by this agreement to

make certain representations concerning the condition of the helicopter at the time of sale, and could not purchase the helicopter for its own account. The evidence showed that this agreement, extended beyond its stated term, governed at the time of the sale to Versatile.

Scott Baker, President and owner of Versatile Helicopter, Inc., a Canadian corporation, is himself a licensed helicopter pilot. In early 2009, Versatile was in need of another helicopter to fulfill its contract with a commercial fruit farm to fly at low altitude over apple and cherry trees to blow water off the fruit to keep it from rotting. Baker, who had experience purchasing helicopters, contacted White at Air Flite, reviewed records for the helicopter, determined that the City's maintenance contractor was FAA certified, and was told that the helicopter was airworthy, that all systems were functioning normally and that it was current on its maintenance. Baker extended an offer for Versatile to purchase the helicopter for $510,000 conditioned upon a current FAA 100-hour annual inspection and issuance of an FAA Export Certificate of Airworthiness. It is undisputed that White told Baker that he would have to take the offer to the City; that White conveyed the offer to the City; and that Deputy Safety Director George Speaks accepted on behalf of the City.

The Purchase Agreement entered into between Air Flite and Versatile on April 24, 2009, provided that payment to Air Flite would be made to a title company and that the helicopter would be delivered in Columbus "with all systems in airworthy condition, a current Certificate of Airworthiness and Annual Inspection." The helicopter was also to be accepted in "an 'as is where is' condition. (NO WARRANTY)." The agreement identified Oklahoma law as controlling, but did not include an integration clause. There is no dispute

that title to the helicopter remained with the City until closing, when it was transferred to Air Flite and then to Versatile.

On May 15, 2009, Baker went to Columbus and personally examined the log books at the City's Police Department for the promised certifications before closing on the deal, taking delivery of the helicopter, and flying it to Canada. Air Flite confirmed the wire transfer from Versatile to the title company, retained its commission, and forwarded the balance to the City. In order to change the registration to Canada, a Transport Canada import certificate of airworthiness was required. However, the inspection performed by a designee for Transport Canada found paperwork deficiencies and serial number discrepancies requiring that the helicopter be taken apart for further inspection. Unfortunately, serious problems were discovered—including expired parts, worn parts, cracked components, and other issues—that caused the helicopter to be unsafe and not airworthy.

Several witnesses aside from Baker himself detailed the problems that were discovered, including the FAA inspector, the Transport Canada designee, and an expert witness retained by Versatile. Suffice it to say, there was evidence that the 100-hour inspection could not have been performed as had been certified and that the helicopter was not airworthy at the time of delivery. Baker testified that he contacted the City and was told that the helicopter had been sold "as is" and they would not do anything. Baker testified, as he had during earlier depositions, that Versatile incurred the cost of repairs that would not have had to be made if the helicopter had been in the condition warranted, as well as expenses and losses that were associated with the delay in getting the helicopter into service.

The City did not dispute the damage calculations, but objected to the exclusion of White's testimony that Baker had declined an offer of a full refund.

## B.      Analysis

The City argues that it was an abuse of discretion under Fed. R. Evid. 403 to have excluded evidence that White told Baker that he would take the helicopter back, even if it could not be flown, and make a full refund to Versatile. This, the City contends, was evidence of Versatile's failure to mitigate its damages by not allowing Air Flite to "cure the defect" or "correct[] the deficiency." On the contrary, this offer did not represent an offer to "cure" the breach of contract but, rather, was an invitation for Versatile to elect to rescind the contract rather than seek damages for the breach. Moreover, the City's continued reliance on authority describing the general duty to mitigate damages does not undermine the district court's finding that the evidence would have impermissibly suggested that Versatile had a duty to elect rescission rather than to seek damages for the breach. *See T.H. Rogers Lumber Co. v. M.W. Judd Lumber* Co., 153 P. 150,151 (Okla. 1915) (purchaser need not return inferior product but may keep it and seek damages); 18 OHIO JUR. 3D CONTRACTS § 276 (when one party breaches the contract, the other may elect to rescind or bring an action for damages). The district court did not abuse its discretion in excluding this testimony.

This brings us to the City's main contention: that the district court erred in denying the motion for judgment as a matter of law made at the close of plaintiff's case (and again after the close of all the evidence). Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED.

R. CIV. P. 50(a). When, as the City claims here, the issue is purely a legal matter, our review is de novo. *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996). A challenge made in a diversity case to the sufficiency of the evidence must be decided under the forum state's standard for determining whether the evidence was sufficient to support the jury's verdict. *Id.* at 176; *see Cantrell v. GAF Corp.*, 999 F.2d 1007, 1014-15 (6th Cir. 1993) (Ohio law).

The City insists that it cannot be held liable to Versatile for breach of contract, as a matter of law, because the City was not a party to the purchase agreement between Versatile and Air Flite. That is, the City contends, the inquiry begins and ends with "four corners of the contract," which White signed as president of Air Flite. This argument misses the mark. The district court properly recognized not only that the purchase agreement did not contain an integration clause, but also that the question of whether Air Flite could bind the City to the contract with Versatile under agency principles was an entirely separate question that may be determined from evidence outside the contract. *See MJR Int'l, Inc. v. Am. Arbitr. Ass'n*, No. 06-cv-0937, 2009 WL 2824102, at *7 n.6 (S.D. Ohio Aug. 26, 2009), *aff'd* 398 F. App'x 115 (6th Cir. 2010) (rejecting MJR's argument that the court could only consider the terms of the contract to which it was not a party to decide whether it could be bound under agency principles).[1]

Generally, "binding the principal to agent-made contracts typically requires that the agent make the contracts on the principal's behalf *with actual authority to do so*." *Cincinnati*

---

[1]There is no dispute that the question of whether the City of Columbus may be held liable under agency principles is governed by Ohio law.

*Golf Mgmt, Inc. v. Testa*, 971 N.E.2d 929, 934 (Ohio 2012) (emphasis in original). "Indeed,

one of the most important features of the agency relationship is that *the principal itself*

*becomes a party* to contracts that are made on its behalf by the agent." *Id*. (citing 2

RESTATEMENT (THIRD) OF AGENCY, §§ 6.01 and 6.02). Any doubt about whether it was

error to look beyond the purchase agreement is assuaged by the following explanation:

> Additionally, a principal may be disclosed even though the contract does not
> name or identify the principal; it is sufficient that the third party has notice of
> the principal's identity. . . . Unless the contract explicitly excludes the
> principal as a party, parol evidence is admissible to identify a principal and to
> subject the principal to liability on a contract made by an agent.

2 RESTATEMENT (THIRD) OF AGENCY § 6.01, cmt. c (2006).

Nor are we persuaded otherwise by the City's reliance on the rule that an agent's

principal, even a disclosed principal, will not be liable when the agent does not enter into the

contract as an agent and the third party elects to contract with the agent alone. *See Soberay*

*Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 767 (6th Cir. 1999) (finding that agent

was an indispensable party because plaintiff contracted with agent separately such that the

agent could be liable). The issue there was whether the *agent* could be liable under the

exception that applies when an agent "has manifested an intention to bind or contract for

himself." *Id*. Significantly, even in *Soberay*, the court did not confine its consideration of

the issue to the terms of the contract. As the district court concluded here, the question of

whether the City could be held liable under agency principles was an issue properly

submitted to the jury.

**II.**

The cross appeal concerns Versatile's challenge to the entry of judgment for less than the amount of damages awarded by the jury. We conclude for the reasons that follow that—although the controversy was eminently avoidable and the district court's frustration understandable—plaintiff was entitled to entry of judgment in the full amount of the contract damages awarded by the jury under Fed. R. Civ. P. 54(c).

## A.    Facts

The Amended Complaint filed in May 2011 asserted three claims: (1) breach of contract; (2) breach of express and implied warranties under Ohio's Uniform Commercial Code (UCC); and (3) negligent or intentional misrepresentation by the City's helicopter maintenance contractor (Helicopter Minit-Men, Inc.) (Counts I-III). The prayer for relief, which the district court explained is misidentified as "Count IV-Damages," alleged with respect to all three claims that:

> 63.    As a direct and proximate result of Defendants' acts and omissions and breach of contract as described, Plaintiff has incurred significant damages.
>
> 64.    Plaintiff has incurred over Two Hundred Thousand Dollars ($200,000.00) to fix, repair and replace worn out, broken and failed helicopter parts and components in order to make the subject helicopter airworthy and to replace parts that should have been repaired/replaced as part of the FAA Annual Inspection that Defendants represented this helicopter had undergone, and to repair the latent and hidden defects in order to put the helicopter in the condition that it was represented by Defendants to be in at the time of sale to Plaintiff, as well as the loss of component value based on additional hours flown by the Columbus Police Department after Plaintiff purchased the helicopter.
>
> 65.    Plaintiff has also incurred incidental and consequential damages, including rental of a loaner helicopter transmission, loss of use of the helicopter, lost rental, lost business revenue and other damages.

These allegations seek overlapping damages of more than $200,000, plus an unspecified amount of incidental and consequential damages. The "wherefore" clause that followed these allegations concluded the prayer for relief with a demand for $250,000 "as to Plaintiff's breach of contract claims," and also, "[a]s to Plaintiff's other claims," requested damages "in an amount in excess of [$25,000.]"

The case proceeded, discovery was conducted, and dispositive motions were filed. Two months before trial, plaintiff's claims were narrowed by the district court's order granting in part and denying in part the defendants' motions for summary judgment. That order, among other things, granted summary judgment to the defendants on the misrepresentation claims alleged in Count III. In that same order, however, the district court also denied summary judgment with respect to the breach of contract and breach of warranty claims in Counts I and II for a variety of reasons, one of which was the continued ambiguity concerning the governing law given the choice of law provision in the purchase agreement. That lack of clarity concerning the applicable law persisted in the lead up to trial, as is reflected in plaintiff's reliance in the final pretrial order upon UCC provisions from both Oklahoma and Ohio as the basis for its breach of warranty claims.

As a result, during the court's telephonic conferences with counsel in the week prior to trial, it was agreed, or at least understood, that the warranty claims would be dismissed and that trial would proceed only on the breach of contract claim. It was apparently only then that plaintiff's counsel recognized the prospect that the demand for a sum certain as to the only remaining claim in the prayer for relief could be an issue. The same day, albeit on the eve of trial, plaintiff filed a motion seeking to amend its prayer for relief to increase the

damages demanded for breach of contract to $510,000. In an order entered on the first day of trial, the district court denied leave to amend for undue delay and was unpersuaded that dismissal of the breach of warranty claims provided good cause to excuse the failure to recognize the flaw in the pleadings earlier. *See* FED. R. CIV. P. 15(a) and 16(b).

There is no question that because leave was sought only to increase the *ad damnum* clause for the claim being tried, and was not seeking a different kind of relief, the denial of leave did not impact the proofs offered on the issue of damages. Versatile presented evidence detailing the damages it incurred, including, costs for repairs, lost value, and the additional expenses and lost income claimed as incidental and consequential damages. At the conclusion of the three-day trial, the jury returned its verdict in favor of Versatile, finding that the City was a party to the contract, that the City breached the contract, and that the total amount of damages directly caused by the City's breach was $379,790.78.

In entering judgment on the verdict, the district court accepted the jury's findings, but entered judgment in the amount of $250,000 on the grounds that the "damages are limited by the amount of requested damages in the first claim of Plaintiff's Amended Complaint." Trying again to avoid this limitation, plaintiff filed a motion to amend its prayer for relief and to alter or amend judgment under Fed. R. Civ. P. 15(b)(2) and 59(e), or in the alternative to reconsider the denial of the earlier motion for leave to amend under Fed. R. Civ. P. 15(a). In denying this motion, the district court set forth the procedural history at length before denying relief for reasons that included finding undue delay in seeking to amend in the first place, prejudice to the City, and the absence of good cause to reconsider the earlier denial of leave to amend. Versatile appeals from that order.

**B.      Analysis**

When we sort out the arguments being made here, it is evident that each aspect of the

district court's decision is to be reviewed for abuse of discretion.  *See Ale v. TVA*, 269 F.3d

680, 692 (6th Cir. 2001) (motion to amend to conform to the evidence under Rule 15(b));

*Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002) (motion to alter or amend judgment

under Rule 59(e)); *In Re Greektown Holdings, LLC*, 728 F.3d 567, 573-74 (6th Cir. 2013)

(motion for reconsideration where there is no local rule reviewed under Rule 59(e)).  It is an

abuse of discretion for the district court to rely on clearly erroneous findings of fact,

improperly apply the law, or use an erroneous legal standard.  *See Intera Corp. v. Henderson*,

428 F.3d 605, 619-20 (6th Cir. 2005).

Versatile points first to Rule 15(b)(2) as authority for its motion to amend the

pleadings after trial.  That rule states, in pertinent part:

> When an issue not raised by the pleadings is tried by the parties' express or
> implied consent, it must be treated in all respects as if raised in the pleadings.
> A party may move—at any time, *even after judgment* to amend the pleadings
> to conform them to the evidence and to raise an unpleaded issue.  But failure
> to amend does not affect the result of the trial of that issue.

Rule 15(b)(2) (emphasis added); *see also Ale*, 269 F.3d at 693 (noting liberal policy of

permitting amendments in order to ensure determination of claims on their merits).  The City

responded that, by successfully objecting to the motion to amend on the eve of trial, it did

not consent to trial of the issue not raised by the pleadings—*i.e.*, damages recoverable for

breach of contract in excess of $250,000.  Whether or not the issue can be said to have been

tried by "consent," we find it was an abuse of discretion to require amendment of the

pleadings as a condition for entry of judgment in the full amount of the verdict under Rule

54(c).  *See, e.g.*, *Hebron Pub. Sch. Dist. No. 13 v. United States Gypsum Co.*, 723 F. Supp. 416, 420 (D.N.D. 1989) ("The pleadings do not limit the amount of the verdict, where the amount is justified by the evidence admitted during trial."), *aff'd* 953 F.2d 398 (8th Cir. 1992).[2]

Versatile specifically relies on Rule 54(c) in its argument on appeal in support of the claim that the district court abused its discretion in denying the motion to alter or amend judgment.  Rule 54(c) provides that, except in cases of default judgment, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  The relief need not have been tried by consent, but the only caveat is that the opposing party must have had notice so as not to be prejudiced. *Bluegrass Ctr., LLC v. U.S. Intec, Inc.*, 49 F. App'x 25, 31 (6th Cir. 2002) (affirming judgment under Rule 54(c) on new theory of promissory estoppel); *see also Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) (citing cases) (errata corrected 511 F.3d 238).

The City's assertion of prejudice, however, does not rest on an alleged lack of notice as to the extent of the damages Versatile would seek to recover at trial.  Nor could it.  The record is clear that the Amended Complaint sought the same damages for each of its claims, identified the nature of those damages, and requested damages for costs, expenses, and lost income in the amount of $250,000 plus amounts "in excess" of $25,000.  The City conducted

---

[2] Nor did the evidence inject a new and different prayer for relief as in the case cited by the district court.  *See Born v. Monmouth Cnty. Corr. Inst.*, 458 F. App'x 193, 199 (3d Cir. 2012) (affirming the denial of a Rule 15(b) motion at trial to add a demand for punitive damages because it is "'unfair and substantially prejudicial to permit the injection of a new and different prayer for relief after trial at the very end of the case'") (citation omitted).

discovery with respect to the issue of damages well in advance of trial and does not argue that it was without notice that damages in excess of $250,000 were being sought.  Finally, there is no suggestion that the City did not have a full opportunity to challenge the proofs at trial.  It was an abuse of discretion to deny the motion to alter or amend judgment asking to enter judgment in the full amount of the jury's verdict in excess of the amount requested on that claim in the prayer for relief.  *See, e.g.*, *Miller v. Dist. of Columbia*, 479 A.2d 329, 331 (D.C. App. 1984) (citing federal decisions for proposition that Rule 54(c) has diminished or eliminated the significance of the prayer for relief); *Bail v. Cunningham Bros., Inc.*, 452 F.2d 182, 188-89 (7th Cir. 1971) (affirming judgment in excess of the demand even though plaintiff's pretrial motion to amend the *ad damnum* clause had been denied); *Riggs, Ferris & Geer v. Lillibridge*, 316 F.2d 60, 62-63 (2d Cir. 1963) (affirming entry of judgment in an amount greater than requested in the *ad damnum* clause).

## III.

Accordingly, the district court's orders are **AFFIRMED** in part, **REVERSED** in part, and the case is **REMANDED** for entry of an amended judgment consistent with this opinion.