[Cite as *The CIT Group/Equipment Fin., Inc. v. Brown Cty.*, 2014-Ohio-5489.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| THE CIT GROUP/EQUIPMENT FINANCING, INC. d.b.a. TOSHIBA AMERICA MEDICAL CREDIT, | : | |
| | : | CASE NO. CA2014-06-011 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N |
| | : | 12/15/2014 |
| - vs - | : | |
| | : | |
| BROWN COUNTY, OHIO, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2013-0588

Keating, Muething & Klekamp, PLL, Brian P. Muething, 1 East Fourth Street, Suite 1400, Cincinnati, Ohio 45202, for plaintiff-appellant

Jessica A. Little, Brown County Prosecuting Attorney, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for defendant-appellee, Brown County, Ohio

**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, The CIT Group/Equipment Financing, Inc. d.b.a. Toshiba America Medical Credit (CIT), appeals from a decision of the Brown County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Brown County,

Ohio.[1]  For the reasons outlined below, we affirm the decision of the trial court.

{¶ 2}   This appeal involves two municipal lease agreements entered into by CIT and Brown County General Hospital (the Hospital).  CIT is a company that leases medical equipment.  The Hospital is a county hospital created by statute whereby a board of Hospital Trustees (Hospital Trustees) is appointed to govern the Hospital.  The lease agreements were entered into by CIT and the Hospital in early 2008 regarding an MRI and related site improvements.  Both leases were signed by the president and CEO of the Hospital, Michael C. Patterson, and authorized by the Hospital Trustees.

{¶ 3}   As this is an appeal from a grant of summary judgment, the following facts are construed most favorably to CIT.  In 2007, the Hospital was facing financial troubles and to alleviate the budget crisis, the Hospital Trustees presented the Brown County Board of Commissioners (Board of Commissioners) with a request to issue $5 million in bonds.  Within its breakdown, the Hospital Trustees included an MRI machine and accompanying building.  The Board of Commissioners favored issuing $5 million worth of revenue bonds.  These revenue bonds were secured solely by the Hospital's revenues as opposed to the full faith and credit of the county.

{¶ 4}   Later the same year, as required by R.C. 339.06(D)(3), the Board of Commissioners approved the Hospital's operating and capital budgets.  Included as a precursor to the operating budget was a sheet listing assumptions on which the budget was based.  One assumption was that an MRI unit had already been purchased and construction on a building housing the MRI was underway with a projected completion and operational date of January 2008.  Under the assumptions a line item was included for "additional MRI depreciation" and projected revenue was included for the MRI project.  However, the final

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar.

operating budget only included a line item for "leases and rentals" and "depreciation and amortization" and did not include a specific line item for the MRI project.

{¶ 5} Eventually, the Hospital Trustees informed the Board of Commissioners of the Hospital's deteriorating financial condition and its questionable ability to remain solvent, notwithstanding the issuance of the revenue bonds. The Board of Commissioners in conjunction with the Hospital Trustees issued requests for proposals pursuant to public bidding requirements for the sale of the Hospital. On January 6, 2011, Southwest Healthcare Services, LLC (Southwest) submitted a proposal for the acquisition of the assets and operations of the Hospital.

{¶ 6} An Asset Purchase Agreement between Southwest, the Board of Commissioners, and the Hospital Trustees was entered into in May 2011. According to a resolution adopted by the Board of Commissioners on May 11, 2011:

> Southwest has agreed to assume all liabilities of the Hospital, indemnify the Board of County Commissioners for any claims or losses, and will provide a secured promissory note in the amount of three hundred thousand dollars ($300,000.00) for the funds owed by the Hospital to the County[.]

This resolution concluded the transaction with Southwest.

{¶ 7} In the midst of the sale, a Forbearance Agreement was being negotiated with CIT because the Hospital had defaulted on the leases. CIT agreed to forbear from enforcing its rights and remedies under the two leases in default in exchange for the Hospital making smaller payments over a certain period of time. Additionally, an Assignment and Assumption Agreement effective June 2, 2011 between the Hospital, Southwest, and CIT outlined Southwest's assumption of all the obligations of the Hospital under the leases. The parties acknowledged that the terms and conditions set forth in the Forbearance Agreement applied to Southwest. However, the scheduled payments agreed to under the Forbearance Agreement were never made to CIT.

{¶ 8} On August 7, 2013, CIT filed suit against Southwest and Brown County, claiming that they were jointly and severally liable for default on the two leases. Motions for summary judgment were subsequently filed by CIT and Brown County. The trial court granted summary judgment in favor of CIT in regard to its claim against Southwest. Regarding CIT's claim against Brown County, the trial court granted summary judgment in favor of Brown County. The trial court found that as a matter of law, no principal/agent relationship existed between Brown County and the Hospital, either by statute or conduct. Further, the trial court found that the language in the Forbearance and Assignment and Assumption Agreements is clear that CIT was to look to the Hospital exclusively for satisfaction of the leases. In turn, Southwest assumed the Hospital's obligations.

{¶ 9} CIT now appeals, raising two assignments of error for review. Because CIT's assignments of error are related, we will address its assignments of error together.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT COMMITTED LEGAL ERROR IN ITS INTERPRETATION OF THE OHIO REVISED CODE SECTIONS REGARDING COUNTY HOSPITALS IN GRANTING BROWN COUNTY'S MOTION FOR SUMMARY JUDGMENT AND DENYING CIT'S MOTION FOR SUMMARY JUDGMENT.

{¶ 12} Assignment of Error No. 2:

{¶ 13} ALTERNATIVELY, THE TRIAL COURT ERRED BY FAILING TO CONCLUDE THAT THE PARTIES' COURSE OF CONDUCT CREATED AN AGENCY RELATIONSHIP.

{¶ 14} CIT argues that an agency relationship exists between Brown County and the Hospital Trustees either explicitly by statute or impliedly through conduct. Specifically, CIT asserts that under R.C. Chapter 339, while the day-to-day functions of the Hospital are placed on the Hospital Trustees, the Board of Commissioners retains authority. In contrast, Brown County asserts that general agency law principles are not applicable to county

- 4 -

governments because the Board of Commissioners has no more authority than specifically conferred or clearly implied by statute.

{¶ 15} Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 16. In applying the de novo standard, the appellate court is required to "us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.).

{¶ 16} Civ.R. 56 sets forth the summary judgment standard. In order to grant summary judgment the court must find that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 17} Agency is "'a consensual fiduciary relationship between two persons where the agent has the power to bind the principal by his actions, and the principal has the right to control the actions of the agent.'" *Cincinnati Golf Mgt., Inc. v. Testa*, 132 Ohio St.3d 299, 2012-Ohio-2846, ¶ 20, quoting *Funk v. Hancock*, 26 Ohio App.3d 107, 110, (12th Dist.1985). "[O]ne of the most important features of the agency relationship is that *the principal itself becomes a party* to contracts that are made on its behalf by the agent." (Emphasis sic.) *Testa* at ¶ 23. "[B]inding the principal to agent-made contracts typically requires that the

agent make the contracts on the principal's behalf *with actual authority to do so.*" (Emphasis sic.) *Id.* at ¶ 24. "The Restatement defines 'actual authority' in terms of an expression of intent by the principal that the agent act on behalf of the principal, along with the understanding of the agent." *Id.*

{¶ 18} CIT asserts that R.C. Chapter 339 as a whole creates an agency relationship between the county and the Hospital Trustees. As such, CIT argues that because R.C. 339.06(F) specifically excludes the county from being liable when a board of hospital trustees contracts a line of credit, the county is liable in all other instances for contracts entered by the Hospital Trustees. CIT, however, fails to take into account the authority, or lack thereof, of the Hospital Trustees as a county board.

{¶ 19} County boards, being creatures of statute, have no more authority than that specifically conferred or clearly implied by statute. *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, ¶ 17. Implied powers are those that are incidental or ancillary to an expressly granted power; the express grant of power must be clear, and any doubt as to the extent of the grant must be resolved against it. *Id.*, citing *State ex rel. A. Bentley & Sons Co. v. Pierce*, 96 Ohio St. 44, 47 (1917).

{¶ 20} In this instance, it is undisputed that the Hospital was created as a county hospital pursuant to R.C. Chapter 339. Under this chapter, the Brown County Hospital Appointing Authority, consisting of the Board of Commissioners, the probate judge, and the common pleas court judge, appoints the Hospital Trustees to manage, control, and operate the Hospital. R.C. 339.02 and 339.06. The Hospital Trustees "ha[ve] control of the property of the county hospital * * *." R.C. 339.06(C).

{¶ 21} Nowhere within R.C. Chapter 339 is the board of hospital trustees granted authority to bind the board of county commissioners or the appointing authority for its contracts and subject the county's general fund to payment of those contracts. As such, and

despite R.C. 339.06(F), R.C. Chapter 339 as a whole does not create a principal/agent relationship between the Board of Commissioners and the Hospital Trustees.

{¶ 22} CIT relies upon two cases to support its position that a principal/agent relationship exists between the Board of Commissioners and the Hospital Trustees. CIT argues that *Wierzbicki v. Carmichael*, 118 Ohio App. 239 (8th Dist.1963), stands for the proposition that a board of hospital trustees acts as an agent of the county that creates it. CIT also supports its argument with *Versatile Helicopters, Inc. v. City of Columbus, Ohio*, 548 Fed.Appx. 337 (6th Cir.2013), in which a city was held liable for breach of a contract that was entered into by an agent of the city. We find these cases distinguishable.

{¶ 23} In *Wierzbicki* the Eighth District observed that statutes provide the board of county commissioners authority to establish a hospital and that a "board of trustees of the Hospital, as an agency of the county, owes a duty only to the public in the exercise of its trust." Based upon the foregoing, the Eighth District found that a county hospital enjoys the privileges of sovereign immunity. *Wierzbicki* at 243. The use of the word "agency" in *Wierzbicki*, however, is not used in the context of a principal/agent relationship and the term "principal" is never used. *Id.* Rather, the word "agency" is referring to a public hospital as an institution and administrative division of the government similar to a county board of developmental disabilities. *See id. Wierzbicki* is not authority for the proposition that a county hospital is an agent of the county.

{¶ 24} *Versatile Helicopters* stands for the proposition that it is appropriate to look outside the four corners of a contract in order to determine whether a principal/agent relationship exits. *Versatile Helicopters* at 340. In *Versatile Helicopters*, the city of Columbus entered into a marketing agreement with Air Flite to act as agent and broker to sell one of the city's helicopters. *Id.* at 339. When an offer was made by Versatile Helicopters to purchase the helicopter, Air Flite stated that it would have to take the offer to the city and the city's

Deputy Safety Director accepted the purchase on the city's behalf. *Id.* The purchase agreement was breached when the helicopter was delivered in an unsafe condition. *Id.* The court in *Versatile Helicopters* found the city liable on the purchase agreement as the principal even though the purchase agreement was signed only by Air Flite, but not the city. *Id.*[2]

{¶ 25} In this instance, unlike *Versatile Helicopters*, there was not a specific agency agreement entered into between the Board of Commissioners and the Hospital Trustees, nor was there explicit acceptance by the county. Rather, the Forbearance and Assignment and Assumption Agreements are both clear in language that CIT looked exclusively to the Hospital for satisfaction of terms. The Forbearance Agreement identified "Brown County General Hospital" as the debtor. The Assignment and Assumption Agreement stated that CIT consented to the assignment and acknowledged the Forbearance Agreement. The Assignment and Assumption Agreement was between Southwest, CIT, and the Hospital. There was no mention of the county or that county approval was necessary. Additionally, a letter from the Hospital's counsel stated: "BCGH has been duly authorized by *its board of trustees* to enter into the Leases and to carry out the obligations thereunder and the transactions contemplated thereby." (Emphasis added.) Consequently, as indicated to CIT, the authority of the Hospital to enter the leases rested with the Hospital Trustees, not the Board of Commissioners.

{¶ 26} In any event, regardless of whether an agency relationship was created, the leases were void as to the county because the necessary statutory prerequisites to create a valid contract binding the county were not satisfied. Courts must strictly construe specific statutory provisions designed by the legislature to safeguard public funds. *Cleveland*

2. In addition to the city entering an agency agreement with a third party to sell the city's helicopter, it is likely that the city was not subject to the same laws applicable to counties. As a charter municipality, the city was free to determine its own contracting standards. *See Dies Elec. Co. v. City of Akron*, 62 Ohio St.2d 322 (1980).

*Trinidad Paving Co. v. Bd. of Cty. Commrs. of Cuyahoga Cty.*, 15 Ohio App.3d 66, 69 (8th Dist.1984). Contracts made in violation or disregard of statutes are void and courts generally will not aid in enforcing such contracts, directly or indirectly, but will leave the parties where they have placed themselves. *Iberis v. Mahoning Valley Sanit. Dist.*, 11th Dist. Trumbull No. 2000-T-0036, 2001 WL 1647184, *3 (Dec. 21, 2001), citing *Buchanan Bridge Co. v. Campbell*, 60 Ohio St. 406 (1899), syllabus. "A party entering into a contract with a governmental agency must ascertain whether the contract complies with the Constitution, statutes, charters, and ordinances as far as they are applicable or that party will perform at his peril." *Id.*, citing *Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 173 (1966).

{¶ 27} R.C. 305.25 provides:

> No contract entered into by the board of county commissioners, or order made by it, shall be valid unless it has been assented to at a regular or special session of the board, and entered in the minutes of its proceedings by the county auditor or the clerk of the board.

Additionally, R.C. 5705.41(D)(1) states that a contract is void if it is made without an attached certificate of the fiscal officer of a particular subdivision stating that "the amount required to meet the obligation * * * has been lawfully appropriated for such purpose and is in the treasury or in process of collection to the credit of an appropriate fund free from any previous encumbrances." *Id.*

{¶ 28} In this instance, there was no approval of the leases by the Board of Commissioners. While the Board of Commissioners approved the Hospital's 2008 operating and capital budgets, the budgets were general in nature. The budgets were based on the inclusion of the MRI machine and building. However, the only mention of the MRI machine and building in the actual budgets was in regards to depreciation. Such an approval of a general budget of a county hospital does not equate to assenting to the leases of the MRI machine and building at a meeting of the Board of Commissioners. Additionally, there was

no certificate attached to the leases from the fiscal officer of the Hospital or the county with the amount required to meet the obligation under the leases.  Consequently, the leases were void as to the county due to a lack of compliance with the foregoing statutory prerequisites.

{¶ 29} In light of the foregoing considerations, in our de novo review, we find that Brown County is entitled to judgment as a matter of law because no agency relationship exists between Brown County and the Hospital Trustees.  Even if such a relationship did exist, the proper procedures were not satisfied in order to bind the county to the contracts, and thus we need not address whether such a relationship was created implicitly by conduct. CIT's two assignment of errors are overruled.

{¶ 30} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.