CLEVELAND TRINIDAD PAVING COMPANY, APPELLEE, *v.* BOARD OF COUNTY COMMISSIONERS OF CUYAHOGA COUNTY, APPELLANT.

(No. 47157—Decided March 16, 1984.)

*Mr. Robert S. Stone,* for appellee.

*Mr. John T. Corrigan,* prosecuting attorney, for appellant.

PRYATEL, J. Defendant-appellant, Board of County Commissioners of Cuyahoga County (hereinafter county commissioners), appeals from a lower court judgment for $17,654.65 granted in favor of plaintiff-appellee, Cleveland Trinidad Paving Company (hereinafter Cleveland Trinidad).

In the fall of 1977, the county commissioners, through the office of the county engineer, requested bids on the contract to improve the Bagley Road bridge over Plum Creek in the city of Olmsted Falls. Cleveland Trinidad was the lowest bidder by $12 and was awarded the contract. Due to another contractor's delay in demolishing the old bridge, the county engineer did not give Cleveland Trinidad instructions to proceed on its contract until mid-November 1977.

The county engineer's office prepares the bid forms and lists the items for each different type of work, with their dollar estimate beside each item. A blank next to their dollar figure is for the bidder's estimate for that item. A contractor may not bid more than ten percent over the county's dollar figure on *any* item, or the entire bid will not be considered.

Item 37 of the bid proposal, incorporated into the contract, was titled "unclassified excavation." "Unclassified excavation" means the excavation of material by normal methods, that is, by use of a backhoe or frontend loader. Cleveland Trinidad bid $20 per cubic yard for this item, which totaled $4,600. This bid was identical to the county engineer's estimate.

In submitting its bid, the appellee admitted that it personally inspected the area. Further, the county engineer's office testified that it made no core borings, a procedure necessary to determine the presence of Berea sandstone. Thus, in bidding on the project, appellee inspected the site and observed the same material observed by the engineer's office when it prepared the specifications. Appellee's own witness testified that no one could determine the presence of Berea sandstone at this particular site without testing through the use of core borings. Furthermore, the bid contract clearly states that: "The County does not guarantee the sufficiency of the plans and specifications submitted with this proposal."

After beginning the project and attempting to excavate the two hundred thirty cubic yards of excavation mentioned in the bid, by using a backhoe and a hoe ram (including an industrial size jackhammer), Cleveland Trinidad discovered that the creek bed contained forty-five cubic yards of solid rock, a condition that admittedly does not fit the description of "unclassified excava-

tion."[1] Actually the rock was Berea sandstone, a rock so hard it was mined to make grindstones.

The trial court found that all bidders, including Cleveland Trinidad, relied upon the county's classification and that all bidders were uniformly misled. The court also found that the county engineer's office surveyed the project and prepared the bid estimates, and "had considerably more time to study the terrain than did the bidders."

Upon finding the Berea sandstone, Cleveland Trinidad informed the county engineer's office, with whom it had been dealing, that blasting was required to remove the rock and that Cleveland Trinidad wanted to be paid for the extra work. According to appellee, Ray Meyers instructed Cleveland Trinidad to proceed with blasting and to keep track of its costs for purposes of payment. Gary Helf, president of Cleveland Trinidad, testified that he has had experience with about five hundred public contracts, most of which have required extra work, and that the customary practice when unforeseen conditions are discovered is to inform the county engineer and to receive and rely on oral approval before proceeding. This procedure was not confirmed by any other contractor. Helf allegedly relied on the county engineer's oral statement to begin blasting.

Cleveland Trinidad hired a blasting expert, Edward Walter, Jr., to design the blasting operation. Walter testified that Berea sandstone can only be removed in thin layers using normal ex-

cavation methods, and that blasting was necessary to remove the Berea sandstone at the Plum Creek site.[2]

Inspectors from the county engineer's office observed, monitored and supervised the blasting operation.

Cleveland Trinidad kept track of its additional costs for the blasting as instructed by the county engineer's office. These costs included those for labor, material, equipment, as well as the fees paid to Walter, the blasting expert. Additional concrete had to be purchased to fill in a hole caused by blasting. The additional costs totaled $21,704.65.

However, the county engineer's office decided that the compensable cost should have been only $4,050. The parties argued for one and one-half years over whether Cleveland Trinidad should be paid its actual costs or the $4,050. In the fall of 1979, more than a year after the project's completion, Meyers, chief construction and testing engineer for the county engineer's office, suggested to Helf that the books on this project be closed out and that Cleveland Trinidad accept $4,050 without prejudice to further negotiations on the alleged balance of the claim. Meyers admitted that the parties had this understanding.

Plaintiff Cleveland Trinidad's exhibit 2, the final accounting voucher made available by the county and signed by the president of Cleveland Trinidad, states the following:

"It is *mutually understood and agreed* that the acceptance of payment of this final estimate by the undersigned is in full satisfaction and liquidation of

---

[1] In fact, Ray Meyers of the county engineer's office admitted on cross-examination that according to the Ohio Department of Transportation there are six categories of excavation: unclassified excavation, unclassified excavation including rock, unclassified excavation including shale, unclassified excavation including rock and/or shale, rock excavation, and shale excavation.

He further admitted that "unclassified excavation" does not include rock.

[2] Walter further testified that he had to clear several feet of mud to find the sandstone and that he was surprised to find Berea sandstone in this particular creek bed, even though this sandstone is common on the west side of Cleveland.

any and all claims * * * (save and except contractor's claim for additional compensation, alleged to be caused by the removal of 45 cubic yards of rock or difficult unclassified excavation — Ref. #37). * * *'' (Emphasis added.)

In reference to the agreement made in the final voucher, Meyers admitted that the county commissioners routinely accepted all agreements made by him as chief construction and testing engineer on projects supervised by his department. A resolution adopted and signed by the county commissioners agreed to pay Cleveland Trinidad $4,050 for the extra work. That resolution did not contain any reservation for extra compensation, and it predated the accounting voucher by almost thirty days.

The trial court found that the additional work was the result of an unforeseen condition, not contemplated by the original contract, and that the county approved the additional work because Bagley Road was a major thoroughfare, hence the project needed to be completed quickly. The trial court further found that Cleveland Trinidad proceeded with this extra work under instructions of the county through its authorized representative, for the county's benefit, and that Cleveland Trinidad properly performed the work and proved its costs.

In its conclusions of law, the trial court ruled that the voucher prepared by the county, and containing the disclaimer as item 37, constituted the necessary writing to evidence an intent to pay for the extra work. The court further noted that even if such a writing had never been executed, the emergency situation entitled Cleveland Trinidad to payment for the extra work required to complete the project.

The trial court found that the county

benefited in the amount of the actual costs for the work, $21,704.65. After subtracting the $4,050 already paid by the county, the court awarded Cleveland Trinidad $17,654.65 plus interest from November 22, 1979[3] and costs.

Appellant has raised three assignments of error in its appeal. The first two assignments are discussed together as they are related in issues of fact and law.

### Assignment of Error No. I

"I. The trial court erred in holding that the Board of Cuyahoga County Commissioners authorized Cleveland Trinidad to proceed to perform any additional work."

### Assignment of Error No. II

"II. The trial court erred in holding that the final accounting voucher that was prepared with respect to the subject contract constituted a novation of the original agreement."

Under both of these assignments, appellant argues that appellee failed to obtain the proper authorization for the extra work. We agree.

Any extra work required to complete a contract with the county must first be authorized in writing by the county commissioners. R.C. 5555.69 provides in relevant part:

"In case of an unforeseen contingency not contemplated by the contract, allowances for extra work may be made *by the board of county commissioners,* but it must *first* enter into a new contract *in writing* for such extra work. * * *'' (Emphasis added.)

Appellant introduced into evidence a written resolution signed by the commissioners agreeing to pay Cleveland Trinidad $4,050 for the extra work performed. (That amount is the one actually

---

[3] The final voucher with the disclaimer clause was signed on November 22, 1979; however, the resolution signed by the com-missioners awarding only $4,050 was signed on October 20, 1979.

paid to Cleveland Trinidad.) This resolution is the only agreement signed by the commissioners that appears in the record. As we have pointed out, it contained no reservation for negotiating additional payment.

Appellee produced a final voucher form, admittedly made available by the county engineer's office, and signed by a representative of Cleveland Trinidad, which expressly states that Cleveland Trinidad's acceptance of the $4,050 would not prejudice further negotiation as to the alleged remaining balance. (There was conflicting testimony as to whether appellee's attorney had this statement added to the voucher.) Although this statement apparently led appellee to believe that it could negotiate for payment of its expenses, this statement was not signed by the county commissioners and thus does not meet the requirements of R.C. 5555.69, *supra.* Also, this voucher was signed almost a month after the resolution (for the $4,050) was adopted by the commissioners. Furthermore, R.C. 305.25 provides the following:

"No contract entered into by the board of county commissioners, or order made by it, shall be valid unless it has been assented to at a regular or special session of the board, and entered in the minutes of its proceedings by the county auditor or the clerk of the board."

The only legally valid new contract was the one for $4,050.

Appellee further argues that the actions of the county engineer's office were sufficient to authorize payment for the full costs of the extra work. Inspectors from the county engineer's office were on the site observing the blasting operations. This fact does not prove that these inspectors were aware of the costs of such operations, nor does it prove that they had the legal authority to either expressly or impliedly bind the county for these costs. Indeed, Helf testified that he received authorization in January 1978 from Meyers of the county engineer's office. However, Meyers did not begin to work for that office until March 1978, a fact undisputed in the record. Furthermore, the statute (R.C. 5555.69, *supra*) does not authorize the county engineer to bind the county for payments for extra work. As we have stated before, the courts must strictly construe specific statutory provisions designed by the legislature to safeguard public funds. *CADO Business Systems of Ohio, Inc.* v. *Bd. of Edn.* (1983), 8 Ohio App. 3d 385. In *CADO,* we noted that contractors must realize that public policy demands that the state, county or any political subdivision may only be bound by a contract that substantially conforms with the applicable statutes (relying on *Buchanan Bridge Co.* v. *Campbell* [1899], 60 Ohio St. 406).

The only contract that was in substantial conformity with R.C. 5555.69 was the one for $4,050. Appellant's first two assignments of error are well-taken.

### Assignment of Error No. III

"III. The trial court erred in holding that unforeseen conditions arose during the performance of the contract.

Appellant objects to the trial court's ruling that, even without a written agreement for the extra work, the emergency situation obviated the need for a written agreement. It is true that Bagley Road was a main thoroughfare and that some blasting was necessary to complete the project. This fact may have allowed appellee to proceed and to be paid later; however, it does not answer the question as to *how much* appellee should be paid. Nor can we find anything in the record to justify the conclusion that this was an emergency. It appears that the county engineer made such a representation to satisfy public clamor from that area, but that situation falls far short of an actual emergency. The fact remains that the county commissioners only authorized $4,050 for the

extra work created by the alleged emergency. Appellant's third assignment of error is sustained.

Judgment is reversed.

*Judgment reversed.*

CORRIGAN, P.J., and ANN McMANAMON, J., concur.