[Cite as *Aquatic Renovations Sys., Inc. v. Walbridge*, 2018-Ohio-1430.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Aquatic Renovations Systems, Inc.                Court of Appeals No. WD-17-038

    Appellant                                    Trial Court No. 2016CV0032

v.

Village of Walbridge                             **DECISION AND JUDGMENT**

    Appellee                                     Decided:  April 13, 2018

* * * * *

Russell R. Miller, J. Mark Trimble and Stephen E. House,
for appellant.

Brian J. Ballenger, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} This case is before the court on the appeal of appellant, Aquatic Renovations Systems, Inc., from the May 15, 2017 judgment of the Wood County Court of Common Pleas.  For the reasons that follow, we affirm the trial court's judgment.

**{¶ 2}** Appellant sets forth the following assignment of error:

> The trial court erred in denying the Motion for Summary Judgment of Plaintiff-Appellant, Aquatic Renovation Systems, Inc., as to Plaintiff-Appellant's claims against the Defendant-Appellee, Village of Walbridge.

## Facts

**{¶ 3}** This case concerns the validity of an agreement between appellee, village of Walbridge ("the village"), and appellant for a new liner for the village's swimming pool ("the pool").

**{¶ 4}** On April 18, 2012, the village council adopted an ordinance which authorized the village's mayor to enter into an agreement with appellant for a new liner for the pool in the sum of $52,720.08.

**{¶ 5}** On May 2, 2012, a Contract Agreement Form between the village and appellant was signed by Edward Kolanko, the acting mayor of the village, and a representative of appellant and witnessed by Janice Sawaya, of the village, and another person. The contract provided for the installation of a new liner for the pool in the sum of $52,720.08, with the work to be substantially completed by May 21, 2012.

**{¶ 6}** On May 9, 2012, before appellant began work on the pool, the village had an engineer conduct a preliminary evaluation of the condition of the pool. An engineering field service report, completed on that day, stated the pool was in need of significant maintenance and repairs, which needed to be undertaken before the liner was installed.

2.

**{¶ 7}** On May 25, 2012, Kenneth Frost, the village's administrator, wrote to appellant's representative indicating appellant's work on the pool could not be completed by May 21, 2012, through no fault of appellant, but the village wanted to go forward with the project after the pool was inspected and repaired.

**{¶ 8}** On June 1, 2012, appellant submitted to the village an application and certificate for payment of $15,763.30, for liner material as well as work for design and submittals, less eight percent retainage. On July 16, 2012, the village issued a check to appellant for $15,763.30. Thereafter, the village had repairs to the pool completed; appellant was not involved in the repair work.

**{¶ 9}** On April 8, 2013, appellant submitted a quotation to the village for installation of the pool liner for the balance due of $36,956.78. Mayor Kolanko signed and initialed the quotation on April 12, 2013.

**{¶ 10}** On June 13, 2013, a change order submitted by appellant to the village in the amount of $3,142.60 was signed by Frost, for the village. The order was also signed by a representative of appellant.

**{¶ 11}** On June 28, 2013, the mayor and appellant's representative conducted a walk-through of the work appellant had performed. Mayor Kolanko and a representative of appellant signed a New Installation, Multi-Division Work Order Form, which set forth that appellant arrived at the pool on June 4, 2013, and completed work on the pool on June 28, 2013.

3.

{¶ 12} On July 3, 2013, Frost notified appellant that the liner had lifted away from the walls and floor of the pool due to a water leak. Appellant sent a representative to the pool to address the issue. The representative surmised part of the problem was a leaking pipe. Appellant provided a pump to the village to remove the water from the liner.

{¶ 13} In the fall of 2013, appellant's representative suggested to Frost that a pressure test should be performed. The test was undertaken and the result was "unable to achieve pressure." Appellant's representative informed Frost of the test result and made other suggestions to resolve the issue, to no avail. Appellant requested payment from the village for the completed and approved work, but the village refused to pay.

{¶ 14} On January 15, 2016, appellant filed its complaint against the village setting forth three causes of action. Appellant alleged it entered into two contracts with the village: the first contract was dated May 2, 2012 ("first contract"), and the second contract was dated April 12, 2013 ("second contract"). Appellant alleged in its first cause of action that the village breached the second contract, and sought damages in the amount of $36,956.78. Appellant alleged in its second cause of action that the village was liable to it under the legal theory of quantum meruit. In its third cause of action, appellant alleged the village received a benefit as a result of the work appellant performed, thus the village was liable to appellant for unjust enrichment.

{¶ 15} On March 24, 2016, the village filed its answer as well as a counterclaim for breach of contract by appellant. In the answer, the village admitted the parties entered into the first contract, but denied there was a second contract between the parties. In the

4.

counterclaim, the village alleged the parties entered into the first contract, and appellant breached that contract.

{¶ 16} On October 28, 2016, appellant filed a motion for summary judgment on its claims and the village's counterclaim. On November 14, 2016, the village filed a motion for summary judgment on its counterclaim as well as appellant's claims. Appellant responded to the village's motion.

{¶ 17} On May 15, 2017, the trial court issued its judgment, finding neither the first contract nor the second contract constituted a valid contract as neither agreement complied with the statutory law. The court further found appellant was not entitled to recover under the theory of quantum meruit or unjust enrichment. The court granted summary judgment to the village on appellant's claims, and granted summary judgment to appellant on the village's counterclaim. Appellant appealed the court's decision to grant summary judgment to the village on appellant's claims. The village did not appeal.

### Standard

{¶ 18} We review a trial court's summary judgment decision on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we undertake our own independent examination of the record and make our own decision as to whether the moving parties are entitled to summary judgment. *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980). Pursuant to Civ.R. 56, the moving party bears the initial burden of informing the trial court of the basis for the motion and presenting evidence in support thereof. *Vahila v. Hall*, 77 Ohio

5.

St.3d 421, 429-30, 674 N.E.2d 1164 (1997); *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264, (1996). "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

## Analysis

{¶ 19} Appellant argued in its motion for summary judgment that the second contract was a new and binding contract, as the first contract was extinguished by the second contract. Appellant also contended Indiana law governed the second contract. Appellant asserted, however, under either Indiana or Ohio law, the second contract was valid and the village breached the second contract causing appellant's damages.

{¶ 20} The village countered it entered into one binding contract with appellant—the first contract. The village maintained the second contract was a quotation solely for the purpose of acknowledging the contract price of $52,750 and that the village already paid appellant $15,763.30. The village submitted it never intended for the second contract to be a new contract or to extinguish the first contract. The village asserted the first contract was authorized by village council pursuant to Ordinance 10-12. The village argued appellant's argument that the mayor entered into the second contract with appellant is misplaced because under R.C. 731.14, village contracts must be signed by the

village mayor and the clerk, and under R.C. 731.141, village contracts must be signed by the village administrator and the clerk.

{¶ 21} In reply, appellant argued the village's contention that the second contract was not properly executed was raised for the first time in the village's summary judgment motion and not as an affirmative defense in its answer, and it is misguided.  Appellant reasoned if the village's argument that the second contract is not valid due to noncompliance with the statutory law, then the first contract would also have no effect because the statutory law was not followed.  Appellant insisted the enforcement of the second contract is consistent with the statutory law and the codified ordinances of the village.  Appellant observed Ordinance 10-12 authorized the mayor of the village to enter into an agreement with appellant to install a pool liner.  Appellant noted although the village had a village administrator prior to the first contract, the administrator did not sign the first contract, only the mayor signed it.  Appellant further contended the village ratified the second contract, and even if the second contract was void, it was made in good faith and appellant incurred considerable expenses, thus appellant is entitled to recover payment for services rendered.

### Appellant's First Cause of Action—Breach of Contract

{¶ 22} "In order to declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain."  (Citations omitted.)  *Episcopal Retirement*

*Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶ 23} In addition to the basic contract formation requirements, a municipal corporation may only enter into a contract as dictated by statute. *Pugh v. Ned Peppers*, 2d Dist. Montgomery No. 22939, 2010-Ohio-1917, ¶ 47. Accordingly, "[a] contract made by [a municipal corporation] * * * in violation or disregard of the statutes on that subject, is void * * *. Courts will leave the parties to such unlawful transaction where they have placed themselves, and will refuse to grant relief to either party." *Buchanan Bridge Co. v. Campbell*, 60 Ohio St. 406, 419, 54 N.E. 372 (1899), syllabus. Therefore, a village "cannot be bound by a contract that is not properly endorsed or 'formally ratified through proper channels.'" *Pugh* at ¶ 48, quoting *Wellston v. Morgan*, 65 Ohio St. 219, 62 N.E. 127 (1901), paragraph three of the syllabus.

{¶ 24} Courts must strictly construe statutory provisions which are designed by the legislature to safeguard public funds. *Cleveland Trinidad Paving Co. v. Bd. of Cty. Commrs. of Cuyahoga Cty.*, 15 Ohio App.3d 66, 69, 472 N.E.2d 753 (8th Dist.1984).

{¶ 25} "Contracts made in violation of state statute or in disregard of such statutes are void, not merely voidable, and courts will not lend their aid to enforce such contracts directly or indirectly but will leave the parties where they have placed themselves." (Citations omitted.) *CommuniCare, Inc. v. Wood Cty. Bd. of Commrs.*, 161 Ohio App.3d 84, 2005-Ohio-2348, 829 N.E.2d 706, ¶ 37-38 (6th Dist.). Thus, a party who enters into a contract with a municipality has the burden of "'ascertain[ing] whether the contract

8.

complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril.'" *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 28, quoting *Lathrop Co. v. Toledo*, 5 Ohio St.2d 165, 173, 214 N.E.2d 408 (1966).

### Affirmative Defense

{¶ 26} As to the second contract,[1] we will first address appellant's contention that the village failed to raise the "legislative authority" argument under R.C. 731.14 and 731.141, as an affirmative defense in its answer.

{¶ 27} An affirmative defense assumes the allegations in the complaint to be true, but constitutes a defense to them. *Davis v. Cincinnati, Inc.*, 81 Ohio App.3d 116, 119, 610 N.E.2d 496 (9th Dist.1991), citing Black's Law Dictionary (6 Ed.1990) 60. Moreover, an affirmative defense has been defined as "'any defensive matter in the nature of a confession and avoidance. It admits that the plaintiff has a claim (the "confession") but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the "avoidance").'" (Citation omitted.) *State ex rel. Plain Dealer Publishing Co. v. City of Cleveland*, 75 Ohio St.3d 31, 33, 661 N.E.2d 187 (1996).

---

[1] We note that only the validity of the second contract is at issue on appeal, as neither party has assigned as error the trial court's ruling that the first contract was not valid. We also note that although the village argued in its summary judgment motion that the first contract was valid, at the hearing on the motions for summary judgment, the village acknowledged that the first contract may be void.

9.

{¶ 28} Civ.R. 8(C) sets forth certain affirmative defenses and requires that a party set forth its affirmative defenses in its responsive pleading. The failure to raise an affirmative defense in an answer results in its waiver. *Hoover v. Sumlin*, 12 Ohio St.3d 1, 3-4, 465 N.E.2d 377 (1984).

{¶ 29} Here, upon review of the village's answer, the village denied there was a "new Quotation or a Second Contract." Since the village denied the existence of a second contract, the village's legislative authority argument does not qualify as an affirmative defense which the village had to raise in its answer.

Validity of the Second Contract

{¶ 30} R.C. 731.14 states in pertinent part that "[a]ll contracts made by the legislative authority of a village shall be executed in the name of the village and signed on its behalf by the mayor and clerk." R.C. 731.141 provides in relevant part "[i]n those villages that have established the position of village administrator * * * [a]ll contracts shall be executed in the name of the village and signed on its behalf by the village administrator and the clerk."

{¶ 31} Ordinance 10-12, adopted by the village on April 18, 2012, was an emergency measure which stated in relevant part that "the mayor is authorized to enter into an agreement with [appellant] to install [a pool liner] * * * in the sum of $52,720.05."

{¶ 32} As to Ordinance 10-12, appellant maintains the second contract was executed in compliance with the ordinance, as the village's authorized agent signed and

10.

initialed the contract. Appellant argued R.C. 731.14 does not require the village to exercise its legislative authority to execute a contract by ordinance. Appellant further argued although the village had an administrator, the ordinance granted authority to the mayor to enter into an agreement with appellant. Appellant asserted an ambiguity was created in the ordinance's enactment, but the purpose and effect of the ordinance was carried out by the village and the mayor. Appellant claimed specific sections of the Codified Ordinances of the village of Walbridge governed construction of the village's ordinances.

{¶ 33} Upon review, it is undisputed that at all times relevant, the village had a village administrator. It is further undisputed that the second contract was only signed by the mayor; it was not signed by the village administrator or the clerk. As such, we conclude R.C. 731.14 does not apply. We must now determine whether R.C. 731.141 and/or Ordinance 10-12 apply.

{¶ 34} R.C. 1.51 provides:

If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

11.

{¶ 35} At the outset, we note the specific sections of the Codified Ordinances of the village of Walbridge upon which appellant relied are modeled after the rules of construction set forth in the Ohio Revised Code.

{¶ 36} Upon review, the general provision, R.C. 731.141, does not conflict with the specific or local provision, Ordinance 10-12. The ordinance granted authority to the mayor to enter into an agreement with appellant, but did not specify the steps necessary to ensure the formation of a valid contract. The statute, however, required that all village contracts must be signed by the village administrator and the clerk. Compliance with the ordinance does not preclude compliance with the statute. Thus, the statute and ordinance can operate concurrently, and both apply. Since the second contract was not signed by the village administrator and the clerk, it did not comply with R.C. 731.141. We therefore find the second contract is not valid. *See City of Toledo v. Corr. Comm. of Northwest Ohio*, 6th Dist. Lucas No. L-16-1155, 2017-Ohio-9149. *See also NaphCare, Inc. v. Cty. Council Ohio*, 9th Dist. Summit No. 24906, 2010-Ohio-4458.

Ratification

{¶ 37} Appellant submitted if there was a question as to the validity and enforceability of the second contract, the village ratified the mayor's actions and the second contract. Appellant suggested that the village ratified the second contract because the village, in its motion for summary judgment, set forth that the second contract was "simply a confirmation of a different textured liner." Appellant claims this sentence is conclusive proof that the second contract was intended to and did substitute the terms of

12.

the first contract. Appellant maintained the village cannot selectively pick which new and different terms were confirmed in the second contract, but argue other terms of the second contract were invalid.

{¶ 38} In its opposition to the village's motion for summary judgment, appellant cited to no legal authority in support of its argument that the village ratified the second contract. In its appellate brief, appellant invited the court to "[s]ee, generally," 20 Ohio Jurisprudence 3d, Counties, Townships and Municipal Corporations, Section 408 (1980), with respect to ratification of unauthorized contracts.

{¶ 39} A review of the record shows appellant has not cited to any case law or rule in support of its contention that the village ratified the second contract. The appellant has the burden on appeal. *See* App.R. 16(A)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Taylor*, 9th Dist. Medina No. 2783-M, 1999 Ohio App. LEXIS 397, * 9 (Feb. 9, 1999). *See also Speller v. Toledo Pub. Schools Bd. of Edn.*, 6th Dist. Lucas No. L-16-1231, 2017-Ohio-7994, ¶ 56. Since appellant failed to comply with App.R. 16, we find appellant's claim that the village ratified the second contract not well-taken.

Good Faith

{¶ 40} Appellant also argued even if the second contract was void, it was made in good faith and appellant incurred considerable expenses, thus appellant is entitled to recover payment for services rendered. In support of this argument, appellant cited to

13.

*Wilson Bennett, Inc. v. Greater Cleveland Regional Transit Auth.*, 67 Ohio App.3d 812, 588 N.E.2d 920 (8th Dist.1990).

{¶ 41} In *Wilson Bennett*, the public authority, Greater Cleveland Regional Transit Authority ("the Authority"), gave notice it would accept bids for a construction project. *Id.* at 815. The Authority provided instructions which set forth requirements which had to be met in order for a bidder's bid to be considered. *Id.* Two bids were submitted, including one by Wilson Bennett, Inc. ("WB"); WB's bid was rejected, and the Authority entered into a contract with the successful bidder. *Id.* at 815-816. WB sued to nullify the contract. *Id.* The trial court held the successful bidder's bid did not meet all of the requirements set forth by the Authority; thus, the contract was void as contrary to law. *Id.* at 817. The court enjoined the Authority from making any further payments to the successful bidder. *Id.* The court of appeals reversed and held "[e]ven where there is a void contract, if such a contract is made in good faith and vast expenses are incurred by the contractor in preparing to complete it, a court will not enjoin the payment of the reasonable value of services rendered." *Id.* at 822. The appellate court found the contract "was not void as contrary to law * * * [and] by applying basic equitable principles, * * * [the successful bidder] was entitled to compensation for the work it actually performed and the benefit it conferred. *Id.*

{¶ 42} While appellant claims it is clearly entitled to compensation pursuant to the holding in *Wilson Bennett*, a review of Ohio case law shows our case, *Knox Elec. Constr.,*

14.

*Inc. v. Huron Cty. Landfill*, 6th Dist. Huron No. H-92-045, 1993 Ohio App. LEXIS 3289, * 8-10 (June 30, 1993), is controlling.

{¶ **43**} In *Knox*, an electrical construction company ("company") performed work at the county landfill, and the company claimed the landfill owed it money for additional work performed under a previously bid contract. *Id.* at * 1. The trial court granted summary judgment in favor of the landfill finding "Ohio law did not permit the company to recover against the landfill in either quantum meruit, contract liability, or estoppel unless the alleged contract was executed or agreed upon [in accordance with the statutory law]." *Id.* at * 3. The company appealed, relying on *Wilson Bennett*. *Id.* at * 7. On appeal, we found *Wilson Bennett* was distinguishable because the company's circumstances varied greatly from the successful bidder's situation. *Id.* at * 9-10. We observed the successful bidder "was awarded the contract by the appropriate authorizing agent, * * * as a result of what it believed to be an apparently successful bid," whereas the company was granted permission for extra work from the landfill's supervisor, who was not the contracting agent for the county and did not have actual or apparent authority to bind the county. *Id.* We therefore refused to apply the holding in *Wilson Bennett*. *Id.* at * 10.

{¶ **44**} Consistent with our holding in *Knox*, we refuse to apply the holding in *Wilson Bennett* in the present case, as appellant failed to establish the second contract was awarded by the appropriate authorizing agents of the village, as mandated by statute.

15.

**{¶ 45}** For the foregoing reasons, we find the trial court did not err in holding the second contract was invalid, and therefore unenforceable. We further find the trial court's award of summary judgment to the village on appellant's first cause of action was proper.

### Appellant's Second and Third Causes of Action
### Quantum Meruit and Unjust Enrichment

**{¶ 46}** Quantum meruit means "'as much as deserved.'" (Citation omitted.) *Dilly Door Co. v. Grymonprez*, 6th Dist. Williams No. WM-97-025, 1998 Ohio App. LEXIS 1223, * 4 (Mar. 31, 1998). The doctrine of quantum meruit is a remedy, derived from the law of equity, "'the basic concept of which is that no one should be unjustly enriched from the services of another.'" (Citation omitted.) *Id.* Thus, recovery in quantum meruit is based upon a promise implied by law, or quasi-contract, to pay a reasonable amount for services rendered and accepted in order to prevent unjust enrichment. *Id.* at * 4-5. By definition, a quasi-contract does not adhere to the formalities required to form a binding contract with a municipality. *Id.* at * 5.

**{¶ 47}** "Unjust enrichment occurs when a person "'has and retains money or benefits which in justice and equity belong to another.'" *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20, quoting *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938).

**{¶ 48}** "When the Ohio General Assembly intended a requirement that legislative authority of a municipal corporation be exercised by ordinance or by resolution or either,

16.

it has expressly so stated, e.g. Secs. * * * 731.141 * * * R.C." *Bryan v. Village of Swanton*, 6th Dist. Fulton No. F-76-4, 1976 Ohio App. LEXIS 6958, * 9 (Nov. 2, 1976). "If the manner in which the legislative authority and power to contract of a municipal corporation can be exercised is expressly prescribed, such prescribed manner is mandatory and exclusive." *Id.*

{¶ 49} Since a municipality may not be held liable on the basis of a quasi-contract, it follows that a claim of quantum meruit or unjust enrichment against a municipality fails. *See Cleveland v. Village of Marblehead,* 6th Dist. Ottawa No. OT-00-018, 2001 Ohio App. LEXIS 1336, * 4-5 (Mar. 23, 2001). *See also McCormick v. Niles*, 81 Ohio St. 246, 251, 90 N.E. 803 (1909) and *Collaborative, Inc. v. Gernheuser*, 6th Dist. Lucas No. L 78-088, 1978 Ohio App. LEXIS 9146, * 8 (Dec. 29, 1978).

{¶ 50} In light of the foregoing, appellant could not recover from the village under a claim of quantum meruit or unjust enrichment. Accordingly, we find the trial court did not err in awarding summary judgment to the village on appellant's second and third causes of action. It follows that appellant's assignment of error is not well-taken.

{¶ 51} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

17.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

James D. Jensen, J.

_____
Christine E. Mayle, P.J.                               JUDGE
CONCUR.

_____
JUDGE