[Cite as *Blausey v. Blausey*, 2019-Ohio-4506.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Jordan Blausey                                    Court of Appeals No. OT-18-039

      Appellee                                    Trial Court No. 16DR168

v.

Corie Blausey                                    **DECISION AND JUDGMENT**

      Appellant                                   Decided:  November 1, 2019

* * * * *

Lisa M. Snyder, for appellee.

Nicholas J. Celebrezze, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is an appeal from the October 16, 2018 judgment of the Ottawa County Court of Common Pleas by appellant, Corie Blausey ("mother"), finding that appellee, Jordan Blausey ("father"), should be designated the residential parent and legal custodian of the couple's minor child, C.B. ("child").  For the reasons that follow, we affirm.

**{¶ 2}** Mother sets forth one assignment of error:

The trial court abused its discretion in finding that it would be in the best interest of the child for appellee [father], rather than appellant [mother], to serve as the child's residential parent and legal custodian.

## Background

**{¶ 3}** Mother and father met in North Carolina, while father was in the military, and the couple married there in 2010. After father was honorably discharged from the service in 2012, he lived in North Carolina with mother and her mother ("maternal grandmother"), before he moved to Ohio in late 2013; mother moved to Ohio a few months later.

**{¶ 4}** In 2014, father started working as a security officer at a nuclear power plant. His employment schedule included 12-hour shifts, overtime and occasionally working out of state.[1] In December 2014, the couple purchased a home in Oak Harbor, Ohio.

**{¶ 5}** Mother became pregnant with the couple's child, and while pregnant, maternal grandmother moved in with the couple. The child was born in March 2015.

**{¶ 6}** In June 2016, father moved out of the marital home. In late October 2016, mother, maternal grandmother and the child moved out of the marital home and into a rental home in Strongsville, Ohio. Father then moved back into the marital home.

---

[1] Father stopped working out of state in 2016.

2.

{¶ 7} On December 13, 2016, father filed a complaint for divorce. Mother answered and moved for temporary custody of the child. A guardian ad litem ("GAL") was appointed, and in February 2017, mother and father reached a temporary agreement on custody and parenting time. The agreement provided that mother would be the child's temporary residential and custodial parent, and father would have parenting time with the child every other weekend, from 10:00 a.m. until 6:00 p.m. on Saturday and Sunday.

{¶ 8} On July 25, 2017, at a pre-trial conference, mother's attorney informed father's attorney, the GAL and the magistrate that mother intended to relocate to the Atlanta, Georgia area with the child. Father learned of mother's plan to relocate from the GAL.

{¶ 9} The GAL filed his final report on September 27, 2017, recommending that mother should be the residential parent and legal custodian of the child.

{¶ 10} On October 3, 2017, mother filed a notice of relocation with the court. The next day, the trial was held before a magistrate and testimony was given by mother, father, maternal grandmother and the GAL. On November 6, 2017, mother filed a notice of withdrawal of the notice of relocation.

{¶ 11} On May 2, 2018, the magistrate issued his decision recommending, inter alia, that father be designated the residential parent and legal custodian of the child. Mother filed objections and supplement objections to the decision regarding the custody matter.

3.

**{¶ 12}** On October 16, 2018, the court issued its judgment entry overruling mother's objections and finding it was in the child's best interest for father to be the residential parent and legal custodian. Mother appealed.

**Law**

**{¶ 13}** An appellate court reviews legal custody determinations for abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of discretion indicates the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record." *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). "[W]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). Further, the magistrate and trial court, as the trier of fact, are not required to follow the GAL's recommendation, as the court ultimately "determines the guardian ad litem's credibility and the weight to be given to any report." *Baker v. Baker*, 6th Dist. Lucas No. L-03-1018, 2004-Ohio-469, ¶ 30. Accordingly, a reviewing court "should be guided by the presumption that the trial court's findings were indeed correct." (Citation omitted.) *Miller* at 74.

4.

{¶ 14} R.C. 3109.04 applies to initial custody determinations between parents, and provides that when allocating parental rights and responsibilities, "the court shall take into account that which would be in the best interest of the children." R.C. 3109.04(B)(1). The court has discretion to determine which factors are relevant, and the court is in the best position to weigh the evidence. *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. A party's status as a child's primary caregiver is a relevant factor which a court should consider in evaluating a child's best interest, but it is not a controlling factor. *Bechtol* at 23-24.

{¶ 15} In determining the best interest of a child, R.C. 3109.04(F)(1) provides that "the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

* * *

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

5.

* * *

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**GAL Report**

{¶ 16} In the GAL's final report, the GAL listed mother's primary concerns, of which there were eight; all were directed at father. The GAL also listed father's five primary concerns, of which two were actual concerns; one was directed at mother.

{¶ 17} The GAL observed father has been unable to have consistent parenting time with the child, as before father filed for divorce, mother did not allow father to regularly visit with the child. The GAL found the child loves both parents very much and is very attached to each parent. The GAL acknowledged mother planned to relocate to Georgia. The GAL recommended that mother should be the residential parent and legal custodian of the child.

**Magistrate's Decision**

{¶ 18} As it relates to child custody, the magistrate summarized the testimony of the witnesses, set forth the best interest factors, and then stated his analysis and findings. The magistrate's findings include: the child was adjusted to both parents' homes; father used to be a "hard sleeper," but that issue has resolved; the child had a medical condition, but there was no indication the condition impacted either parent's ability to care for the child; father exercised his court-ordered parenting time with the child; mother "has been reluctant and a bit controlling regarding the parenting time she would agree to between

6.

[the child] and [father]," mother initially required father "to visit the child supervised in either [mother's] or [maternal grandmother's] presence" and after mother moved to Strongsville, she did not permit father to remove the child from her home; father's parenting time has expanded to one overnight every other weekend; father has requested additional time with the child throughout the case, but mother has not been agreeable; while there was no denial of court-ordered parenting time, father requested additional midweek overnight time with the child which mother unreasonably denied; mother imposed unwarranted limitations on father's parenting time with the child; it would be unreasonable to adopt mother's assertion that father has not shown motivation or a willingness to parent the child.

{¶ 19} The magistrate's findings, with respect to mother's intent to relocate with the child to Georgia, include: mother filed her notice to relocate the day before trial and father only learned of the proposed move from the GAL at trial; mother stated she was moving to remain close to her family, as her parents were reconciling so maternal grandmother was moving to Georgia to be with maternal grandfather; mother has additional family in Georgia; mother would be living about 60-90 minutes from her parents; maternal grandmother has resided with the child for his entire life; mother indicated said would be moving to Georgia with the child even if maternal grandmother did not relocate there, which was "inherently contradictory," as mother indicated throughout the trial the significant bond the child has with maternal grandmother; mother put a significant priority on the relationship between child and maternal grandfather;

7.

father will remain in the Ottawa County, Ohio area; father's family is primarily located in the Port Clinton, Ohio area; mother did not appear to factor in the impact to the child of losing significant contact with father; father was not in agreement with the move and prior to deciding to move, mother did not consult with father; mother "seemingly took for granted that she and [the child] would be relocating to Georgia" because mother "testified she already leased a residence * * * in Georgia. Based on [mother's] actions in this regard, the Court finds that [mother] was not acting in the best interest" of the child "by failing to discuss the matter with [father], failing to disclose the intent to relocate until the time of trial and failing to consider the impact of moving [the child] away from his father and father's extended family." The magistrate concluded that father should be designated the residential parent and legal custodian of the child.

### Judgment Entry

{¶ 20} In the judgment entry, the trial court found the magistrate's decision was sufficient for the court to make an independent analysis of the issues, and apply the law. The court mentioned the magistrate considered all of the R.C. 3109.04 best interest factors. The court considered the testimony of the parties and GAL and found mother denied father parenting time, which was unreasonable, and mother limited father's parenting time, which was not warranted. The court rejected mother's assertion that father was not motivated or willing to parent the child. In addition, the court noted "it was a significant factor that [mother] filed a Notice of Intent to Relocate * * * the day

8.

before the trial." The court also observed mother withdrew her notice to relocate a month after trial.

{¶ 21} The court concluded mother was "not acting in the best interest of the child." The court overruled mother's objections and ordered, inter alia, father "shall be designated the residential parent and legal custodian of the parties' minor child."

**Arguments**

{¶ 22} Mother argues the trial court abused its discretion by finding that she denied or interfered with father's parenting time. She notes the magistrate found "'[mother] has been reluctant and a bit controlling regarding the parenting time she would agree to between [father] and [child],' because 'initially [mother] required the [father] to visit the child supervised in either [mother's] or [mother's] Mother's presence.'" However, mother contends there is "not an iota of evidence in that record that [she] ever refused to permit or placed limitations (unwarranted or otherwise) on [father's] Court-ordered parenting or visitation rights." Further, mother maintains the magistrate's comment could only pertain to the initial separation of the parties, prior to the temporary parenting consent agreement, when she was justifiably concerned about the child and, in exercising parental responsibility, made choices. Mother was "nervous about allowing [father] to be unsupervised with [the] child or take [the] child for overnight visits" because during the first six months of the child's life, father "was mostly a non-participant in the baby's care," father was a "hard-sleeper," and father was inattentive with the child.

9.

**{¶ 23}** Regarding limitations on father's parenting time, mother asserts the only possible incident occurred when father said his mother would pick up the child but mother told father, "on the instructions of her attorney," only he could pick up the child. Mother notes father's visit was not limited as father picked up the child and visited with the child.

**{¶ 24}** With respect to her intention to relocate, mother argues she informed the GAL, at a pretrial in July 2017, "that her parents had decided to reconcile, and because [maternal grandmother] would be moving back to Georgia, [mother] planned to relocate as well." Mother notes the record is replete with evidence that maternal grandmother was an incredibly important person in the child's life. Mother further observes the GAL recommended that even if mother moved to Georgia with the child, it still was in the best interest of the child for mother to be the residential parent and legal custodian.

**{¶ 25}** Mother contends the magistrate erroneously set forth in his decision that father only learned of the proposed move to Georgia at trial in October 2017, when father was told in July 2017. In addition, mother notes she formally withdrew her notice of relocation a month after trial and five months before the magistrate's decision was issued, but the magistrate made no mention that mother decided to stay in Ohio.

**{¶ 26}** Mother argues the trial court abused its discretion in relying on her notice of relocation, despite the court's awareness that she had withdrawn the notice after trial. Mother claims the court further abused its discretion in refusing to hold a hearing so that new evidence could be considered.

10.

**Analysis**

{¶ 27} We will first address mother's contention that the trial court abused its discretion in failing to hold a hearing after she withdrew her notice of relocation.

{¶ 28} Civ.R. 53(D)(4)(d) provides:

> If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

{¶ 29} Mother argues the court should have heard and considered the new evidence, as she did not cancel her plan to move until after trial, so she could not reasonably have been expected to present evidence to the magistrate which did not exist. Mother claims the court refused to consider the new evidence because she did not withdraw her notice of relocation until after trial. Mother asserts the court's failure to hear and consider the new evidence was inconsistent with a best interest determination.

{¶ 30} Upon review, mother's new evidence consisted of her withdrawal of notice of relocation, filed about one month after trial, which stated she "hereby withdraws her Notice of Relocation that was filed herein on October 3, 2017." No further explanation

was offered. Mother, in her supplemental objections to the magistrate's decision, requested that the court reject the magistrate's decision and order that she be designated the residential parent of the child, but if the court "deems it is not in the position to render such an order * * * then [mother] asks this Court to take additional evidence at a hearing." However, mother presented no argument or evidence in support of her burden, under Civ.R. 53(D)(4)(d), to demonstrate the court was required to hear additional evidence. We therefore find the court did not abuse its discretion in failing to hold a hearing to take additional evidence regarding mother's decision not to relocate.

### Father's Parenting Time

{¶ 31} With respect to mother's arguments that the trial court abused its discretion by finding she denied, limited or interfered with father's parenting time, we find the evidence does not support mother's position. The record shows the magistrate noted there was no denial of court-ordered parenting time, but father consistently requested additional time with the child, to which mother would not agree or mother denied. The magistrate also found mother required father to have his visits with the child supervised by either her or maternal grandmother, and initially, mother would not permit father to remove the child from her home. The magistrate noted mother's only concerns with father's ability to care for the child were motivation or willingness, but the magistrate found it would be unreasonable to adopt mother's assertions as to those concerns.

{¶ 32} The record indicates mother was the child's primary caregiver for the first six months of his life, with maternal grandmother's help, yet father was always involved

12.

in the child's life. Father would feed the child, change diapers and go to some doctor appointments for the child. Father was aware of the medical condition the child had, but no longer has. Father stated he used to be a "hard sleeper," but no longer is.

{¶ 33} Father worked 12-hour shifts as well as overtime, and had some hobbies or interests which took him away from home. Yet, father also spent time with the child, even after mother moved to Strongsville with the child and required father to visit with the child at her home. Father complied with mother's requirements and conditions in order to spend time with the child.

{¶ 34} We find the magistrate's conclusions that mother denied, limited or interfered with father's parenting time, were supported by evidence in the record, as were the trial court's findings that mother unreasonably denied father parenting time with the child and limited father's parenting time, which limits were not warranted. We further find the court did not abuse its discretion in arriving at these finding.

<strong>Relocation</strong>

{¶ 35} Regarding mother's assertion that the trial court abused its discretion in relying on her notice of relocation as justification for designating father the custodial parent despite knowing she withdrew her notice of relocation, we find no merit to this assertion. The record includes other evidence which supports the court's designation of father as the custodial parent of the child.

{¶ 36} At trial father testified, inter alia, he lived in the marital home since mother and the child moved to Strongsville, and he was planning on moving within a year to a

13.

nearby farmhouse, owned by his significant other, which was being renovated to accommodate the members of his and her family. He stated the child loves the animals at the farm, loves his significant other, who is pregnant, and gets along with her children. Father lives in close proximity to a majority of his family, and takes the child to visit with relatives.

{¶ 37} Father stated he works five to ten miles from home and has applied for other jobs in case his current work closes. When father works, he has a sitter lined up for the child, or his significant other can watch the child if she is not working, or a family member can watch the child.

{¶ 38} Father indicated the child could attend school in the Benton Carroll School District when he starts kindergarten. Father considered mother to be a great mother to the child and he would prefer a parenting arrangement which was "50-50." Father acknowledged maternal grandmother was an integral party of the child's life, as she has been in the home the child's entire life.

{¶ 39} The GAL testified at trial that the child loves his parents and both parents' homes were appropriate. The GAL did not have any major concerns with either parent, although the GAL thought father needed to have more time with the child. The GAL recommended that mother should be the residential parent and legal custodian of the child since she was the primary caregiver and was planning to move to Georgia, but father "would get as much time as humanly possible."

14.

{¶ 40} The record further shows the magistrate found mother did not consult with father prior to deciding to move to Georgia with the child, father was not in agreement with the move, and mother seemed to take for granted that she and the child would relocate to Georgia. The magistrate concluded that based on mother's actions, she was not acting in the child's best interest "by failing to discuss the matter with [father], failing to disclose the intent to relocate until the time of trial and failing to consider the impact of moving [the child] away from his father and father's extended family." While the magistrate was mistaken in finding that father only learned of mother's proposed move from the GAL at trial (father testified he found out at the last court date, which was in July 2017), the error is not prejudicial since the magistrate's finding that mother was not acting in the child's best interest was substantiated by other accurate evidence in the record.

{¶ 41} Appellant also takes issue with the magistrate's failure to mention in his decision the new evidence she submitted after trial. Mother fails to cite to any legal authority for this proposition, as is required by App.R. 16(A)(7), thus we find this claim not well-taken. *See Aquatic Renovations Systems, Inc. v. Village of Walbridge*, 6th Dist. Wood No. WD-17-038, 2018-Ohio-1430, 110 N.E.3d 877, ¶ 39.

{¶ 42} Mother further argues the court was "fully aware that [mother] had withdrawn her Notice of Relocation eleven months earlier and had remained in Ohio. * * * Yet the Court failed to recognize these facts as relevant."

15.

{¶ 43} The record reveals the court was cognizant that mother filed her notice of relocation the day before trial and withdrew her notice of relocation approximately one month after trial, as the court mentioned these facts in the judgment entry. The court further stated in its entry that the appropriate weight was placed on each R.C. 3109.04 factor. "A reviewing court must presume that the trial court considered all relevant factors unless the record affirmatively demonstrates to the contrary." *Goodman v. Goodman*, 3d Dist. Marion No. 9-04-37, 2005-Ohio-1091, ¶ 19. Since nothing in the record affirmatively indicates the court did not consider all of the relevant best interest factors, we presume the court recognized all relevant facts, including mother's withdrawal of her notice of relocation.

{¶ 44} Considering all of the evidence presented at trial, we find the magistrate's observations and findings are supported by the transcript, except as to when father was informed that mother intended to relocate. We further find the trial court did not abuse its discretion when it undertook an independent examination and analysis of the magistrate's decision, considered the relevant best interest factors which were in the record, and designated father as the residential parent of the child, as this decision is supported by a substantial amount of credible and competent evidence. Accordingly, mother's assignment of error is not well-taken.

16.

**{¶ 45}** On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Christine E. Mayle, P.J. _____

_____

Gene A. Zmuda, J. _____
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.